IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JANE DOE (T.W.),                    )
                                    )
        Plaintiff,                  )
                                    )        No. 3:23-cv-00928
v.                                  )
                                    )        JUDGE RICHARDSON
JRD PARTNERSHIP, ET AL.,            )
                                    )
        Defendants.                 )

**MEMORANDUM OPINION**

Pending before the Court is the motion to dismiss Plaintiff's Second Amended Complaint

(Doc. No. 46, "SAC") filed by Defendants Wyndham Hotels & Resorts, Inc., Wyndham Hotel

Group, LLC, and Days Inns Worldwide, Inc. (collectively, "Moving Defendants")[1] pursuant to

Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 66, "Motion").[2] Moving Defendants filed an

accompanying memorandum in support thereof (Doc. No. 67, "Memorandum"). Plaintiff

---

[1] The SAC refers to these three Defendants collectively as "Wyndham Brand Defendants." (Doc. No. 46 ¶ 19).

[2] There are other Defendants in this case that are not encompassed within the term "Moving Defendants" as just defined and are instead referred to herein collectively as "co-Defendants." Certain co-Defendants are referred to by more specific monikers. One discernible category of co-Defendants consists of Shri Mahavira Clarksville, Inc., and Shree Mahavira, LLC. These defendants are the franchisee owners of the Clarksville Days Inn and are herein collectively referred to as "Days Inn Franchisee Defendants." (Doc. No. 46 ¶¶ 22-23).

   As noted below, Moving Defendants allegedly are franchisors of hotels, as are certain co-Defendants, who are referred to together with Moving Defendants collectively as "Franchisor Defendants." (Doc. No. 46 ¶ 20). Notably, when a reference is made to what the SAC says about Moving Defendants, sometimes the reference is not just to Moving Defendants but rather to all Franchisor Defendants. Co-Defendants have filed separate motions to dismiss (Doc. Nos. 68 and 72). The Court will address those motions separately in due course; herein, the Court addresses only the Motion.

thereafter filed a response in opposition (Doc. No. 84) to which Plaintiff filed a reply (Doc. No. 90). For the reasons stated herein, the Motion will be DENIED.

## BACKGROUND[3]

Between April 2011 and October 2014, Plaintiff was (human) trafficked at the Clarksville Days Inn. (Doc. No. 46 at ¶ 28). During this period her trafficker controlled her, physically abused her, and threatened her family in order to force her to perform commercial sex for his commercial benefit. (*Id.* at ¶ 30). Plaintiff alleges that Moving Defendants knew or should have known that trafficking was taking place on their properties. (*Id.* at ¶ 122). Plaintiff alleges that due to the widespread problem of sex trafficking in the hotel industry and intense public scrutiny on this issue, Moving Defendants had a general awareness of this issue. (*Id.* at ¶ 62). Plaintiff also alleges that Moving Defendants had specific knowledge that sex trafficking was ongoing and widespread at Moving Defendants' branded properties. (*Id.* at ¶ 66). Moving Defendants had been the focus of several news stories for providing a venue where sex trafficking had occurred in multiple parts of the country. (*Id.* at ¶ 64).

Further, online reviews of Moving Defendants' branded properties, which the company monitors regularly, demonstrate Moving Defendants' specific knowledge of this issue. (*Id.* at ¶ 66). There were also specific indicators that trafficking activity was occurring at the Clarksville Days Inn, which is Moving Defendants' branded property. (*Id.* at ¶ 74). First, there was a frequent flow of males into and out of rooms after brief stays when they were not guests of the hotel. Second,

---

[3] The facts herein are taken from the SAC, which is the operative complaint in this case. For purposes of the instant Motion, the facts in the SAC are accepted as true, except to the extent that they are qualified herein (as, for example, by "Plaintiff alleges") to denote that they are not being taken as true but instead are set forth merely to make clear what a party claims to be true. Throughout this opinion, the Court forgoes any such qualifiers for any fact that it is accepting as true, stating those facts without qualification even though it is aware that any such (alleged) fact ultimately might not prove to be true.

there was also at the hotel a widespread drug trade, an enterprise which is closely linked to that of human trafficking. Third, there was an area of the hotel that staff informally designated for traffickers, drugs, and prostitution. Finally, the rooms used by the traffickers were observed to be messy and to contain excessive sex and drug paraphernalia within them. (*Id.* at ¶ 74).

Plaintiff alleges that Moving Defendants either knew or should have known about the trafficking activity that took place at the Clarksville Days Inn. Non-public information was available to Moving Defendants, as Moving Defendants conducted inspections of the hotel property, employed field agents to work with hotels on trafficking issues, monitored anti-trafficking efforts, required franchisee staff to report trafficking activity, had access to surveillance systems, and solicited customer feedback and complaints. (*Id.* at ¶ 129).

Plaintiff alleges that her trafficking was obviously apparent. There was constant foot traffic of men in and out of her room where Plaintiff performed commercial sex with up to fifteen men a day. (*Id.* at ¶ 82). These men would enter and leave Plaintiff's room at unusual times and stayed only for brief periods of time when they were not hotel guests. These entrances and exits were captured by Moving Defendants' surveillance cameras in the hotel. Further, Plaintiff's traffickers would decline housekeeping service for several consecutive days. (*Id.* at ¶ 82).

The Clarksville Days Inn is run by two franchisee companies that are co-Defendants. (*Id.* at ¶¶ 22-24). Moving Defendants retained day-to-day control over the renting of rooms at the Clarksville Days Inn. (*Id.* at ¶ 141). They exercised this control by requiring Days Inn Franchisee Defendants to use Moving Defendants' centralized reservation system, Moving Defendants' software for booking and checking in guests, and Moving Defendants' software to process payments. Moving Defendants further exercised this control by controlling the rental price of the rooms and collecting reservation and pricing data. (*Id.* at ¶ 141). Moving Defendants received

revenue every time that a room was rented at the Clarksville Days Inn in the form of a fee from Days Inn Franchisee Defendants. (*Id.* at ¶ 148). Moving Defendants also imposed several obligations on Days Inn Franchisee Defendants. These included requiring the hotel staff to keep detailed records of the day-to-day operations of the hotel, reporting data to Moving Defendants, restricting available vendor procurement for Days Inn Franchisee Defendants, requiring Days Inn Franchisee Defendants to participate in marketing and advertising programs, requiring that employees participate in a standardized training, and setting qualification, pay ranges, and employee standards to Days Inn Franchisee Defendants. (*Id.* at ¶ 153).

Moving Defendants also enforced control over Days Inn Franchisee Defendants by monitoring the hotel for compliance with their policies, reserving the right to inspect the hotel, and reserving the right to terminate the franchise agreement. (*Id.* at ¶ 154).

LEGAL STANDARD

For purposes of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must take all of the factual allegations in a complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id.* A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 1950. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id.*; *Fritz v. Charter Tp. of Comstock*,

592 F.3d 718, 722 (6th Cir. 2010), *cited in Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely *consistent* with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish *plausibility* of entitlement to relief even if it supports the *possibility* of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 167 L.Ed.2d 929 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bold" allegations. *Id.* at 681. The question is whether the remaining allegations—factual allegations, *i.e.*, allegations of factual matter—plausibly suggest an entitlement to relief. *Id.* If not, the pleading fails to meet the standard of Federal Rule of Civil Procedure 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id.* at 683.

As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Rule 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). When a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment. *Doe v. Ohio State Univ.*, 219 F. Supp. 3d 645, 652–53 (S.D. Ohio 2016); *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791–92 (M.D. Tenn. 2018).

<u>DISCUSSION</u>

Plaintiff has filed this lawsuit pursuant to the Trafficking Victims Protection Reauthorization Act ("TVPRA"). The TVPRA has two provisions relevant for present purposes—

one criminal (18 U.S.C. § 1591) and one civil (18 U.S.C. § 1595); the two are interrelated. The

criminal provision provides criminal penalties for:

> (a) Whoever knowingly –
>
> (1) in or affecting interstate or foreign commerce, … recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
>
> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1)
>
>> knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a). The civil provision states the standard for civil liability of the kind that

Plaintiff seeks to impose on Moving Defendants here—i.e., civil liability of a defendant to a victim

due to a violation of a provision of the particular chapter (Chapter of Title 18 of the United States

Code in which 18 U.S.C. § 1591(a) is found). That provision reads, in pertinent part:

> An individual who is a victim of a violation of this chapter [including a violation of 18 U.S.C. § 1591(a)] may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a). This statute created a cause of action for "beneficiary liability".[4] Plaintiff has

sued Moving Defendants under this theory in Cause of Action 2 as set forth in the SAC. In Cause

---

[4] Beneficiary liability was established under the amended TVPRA in order to hold accountable those who are not subject to criminal liability under Section 1591 yet still "knowingly benefitted" from participating in a venture they knew or should have known was committing an offense under Section 1591. *See Doe v. Wyndham Hotels & Resorts, Inc.*, 2024 WL 4224915 at *3 (W.D. Tex. Aug. 30, 2024).

of Action 3, Plaintiff proceeds under the theory that Moving Defendants are vicariously liable for TVPRA violations (allegedly) committed by Days Inn Franchisee Defendants. And in Cause of Action 4, Plaintiff proceeds under the theory that Moving Defendants are vicariously liable for Days Inn Franchisee Defendants' *employee's violations* of the TVPRA because (according to Plaintiff) Moving Defendants are joint employers of the staff of the Clarksville Days Inn. The Court will address each claim in turn.

## 1. Beneficiary Liability Under Section 1595

The essential question as to this claim is this: how far up the chain does liability go under § 1595(a)? District courts have come to different conclusions when answering this question. Some have said that liability can be extended to the franchisors of hotels under this statute while others have said the opposite. *See A.B. v. Marriott Int'l, Inc.,* 455 F. Supp. 3d 171 (E.D. Pa. 2020) (providing an overview of the split in district courts addressing § 1595 beneficiary liability for franchisor defendants). When analyzing the factual scenario in the instant case, this Court is inclined to agree with the reasoning outlined in *M.A. v. Wyndham Hotels & Resorts, Inc*., 425 F. Supp. 3d 959 (S.D. Ohio 2019), which ultimately extended liability to the franchisor defendants in that case. As set forth below, the Court finds persuasive the reasoning and conclusion in that (within-circuit) opinion and deems it worthy of adoption.[5]

---

[5] There has been no appellate ruling on this issue from the Sixth Circuit. Therefore, although the Court acknowledges that it is not bound by the analysis and ruling announced in *M.A.*, the Court does place some weight in the fact that it originated from a district within the Sixth Circuit. This opinion, authored by Judge Marbley, has been widely used as an influential guide for analyzing TVPRA beneficiary-liability-based claims. Judge Marbley has authored other opinions on this specific subject that have been widely cited by other courts. *See H.H. v. G6 Hospitality, LLC*, No. 2:19-cv-755, 2019 WL 6682152 (S.D. Ohio Dec. 6, 2019); *Doe S.W. v. Lorain-Elyria Motel, Inc.*, No. 2:10-cv-1194, 2020 WL 1244192 (S.D. Ohio Mar. 16, 2020); *A.C. v. Red Roof, Inc.*, No. 2:19-cv-4965, 2020 WL 3256261 (S.D. Ohio Jun. 16, 2020).

Beneficiary liability under § 1595(a) requires that: "(1) the person or entity must knowingly benefit, financially or by receiving anything of value, (2) from participating in a venture, (3) that the person knew or should have known has engaged in an act in violation of this chapter [including a violation of 18 U.S.C. § 1591(a)]." *M.A.*, 425 F. Supp. 3d at 964 (citations omitted).

a. Knowing Benefit

Plaintiff alleges that Moving Defendants "knowingly benefitted" financially from the venture (i.e., the alleged human trafficking venture that allegedly engaged in acts violative of 18 U.S.C. § 1591(a)) because (according to Plaintiff) Moving Defendants received financial revenue every time that a room was rented to a trafficker. Moving Defendants do not specifically address this argument in their briefing, opting instead to focus on attacking the other two elements of the beneficiary-liability-based claim as discussed below. Following the reasoning in *M.A.*, this Court similarly concludes that "the rental of a room constitutes a financial benefit from a relationship with [a] trafficker sufficient to meet this element of the § 1595(a) standard." *M.A.*, 425 F. Supp. 3d at 965. Plaintiff has plausibly alleged that Moving Defendants receive revenue when one of their branded hotel rooms is rented, and that they received revenue from the trafficker when he rented a room at the Clarksville Days Inn. (Doc. No. 46 at ¶ 148). Therefore, the Court finds that Plaintiff has plausibly alleged this element of the claim.

b. Participation in a Venture

The second element of a beneficiary-liability-based claim under § 1595(a) is that an entity must "participate in a venture." The parties contest the applicable law guiding whether franchisor defendants generally can be deemed to have "participated in a venture" as required for liability under the TVPRA. As noted, there has been no Sixth Circuit (or, for that matter, United States Supreme Court) case deciding this issue. The Court therefore considers persuasive sources in an

attempt to ascertain the law—an attempt that is challenging because "the district courts are all over the map on the meaning of the[ ] terms" used in the elements of a beneficiary-liability-based claim. *Doe #1 v. Red Roof Inns, Inc.,* 21 F. 4th 714, 725 (11th Cir. 2021). As a starting point, however, the Eleventh Circuit in *Doe #1* explained that "[t]he ordinary meaning of 'venture' is an undertaking or enterprise involving risk and potential profit." *Doe #1*, 21 F.4th at 724.

Plaintiff attempts to distinguish this case by arguing that *Doe #1* was limited to the theory alleged by the plaintiffs in that case, which was that the franchisor defendants participated in "sex trafficking ventures." (Doc. No. 84 at 7). Plaintiff aptly points out that the plaintiffs in that case did not allege that the franchisor defendants participated in "commercial ventures," such as operating a hotel, but instead focused on the franchisor defendants having taken "part in the common undertaking of sex trafficking with hotel employees, management, owners, and sex traffickers." *Doe #1*, 21 F.4th at 726. The Court finds this point well taken.[6] The Seventh Circuit

In arguing that franchisor defendants are too removed from trafficking activity to be held liable on beneficiary-liability-based claims, Moving Defendants rely on *Doe #1*. In that case, the Eleventh Circuit found that the plaintiffs' "allegations may suggest that the franchisors financially benefitted from renting hotel rooms to the Does' sex traffickers. But they do nothing to show that the franchisors participated in a common undertaking involving risk or profit that violated the TVPRA—i.e, the alleged sex trafficking ventures." *Doe #1*, 21 F.4th at 727. Ultimately that court found that the plaintiffs could not sufficiently connect the dots from the traffickers to the franchisor defendants under this theory, because "they have provided no plausible allegations that the franchisors took part in the common undertaking of sex trafficking." *Id.* at 727.

---

[6] In *Doe #1* itself, the Eleventh Circuit noted that the plaintiffs tried to argue something different on appeal, namely "that the franchisors participated in commercial ventures to operate hotels and that those hotel ventures violated the statute." *Doe #1* 21 F.4th at 727. The Court infers that the alleged "commercial ventures" to which the plaintiffs tried to pivot were above-board in nature, or somehow legitimate and not

found *Doe #1* inapplicable in *G.G. v. Salesforce.com, Inc.,* 76 F.4th 544 (7th Cir. 2023), wherein the plaintiffs framed the venture in terms of commercial activity as opposed to sex trafficking itself. Id. at 561 ("Key to the court's reasoning was how plaintiffs had chosen to define the alleged venture- specifically as a 'sex trafficking' venture . . . if the plaintiffs had alleged that the franchisors participated in *commercial ventures* to operate hotels and that those hotel ventures violated Section 1591, the result might have been different.") (citations omitted). And in *Doe #1* the Eleventh Circuit noted that its analysis turned on defining "the venture the Does say that the franchisors participated in." *Doe #1*, 21 F.4th at 726.

In the instant case, Plaintiff has alleged that Moving Defendants have participated in a *commercial venture* with traffickers by receiving a fee from Days Inn Franchisee Defendants when they rented rooms out to individuals, including Plaintiff's trafficker. This serves to materially distinguish the instant case from *Doe #1*. And Plaintiff cites many cases where courts have extended liability to franchisor defendants based on their commercial relationships with traffickers because they (the franchisor defendants) received fees from room rentals that the franchisees rented to traffickers.[7] One such case that closely resembles the present factual scenario is *A.W. v. Red Roof Inns, Inc.,* No. 2:21-CV-04934, 2022 WL 17741050 (S.D. Ohio Dec. 16, 2022), wherein a trafficking victim sued a franchisor defendant on a beneficiary-liability-based claim pursuant to

---

connected with a sex-trafficking scheme. The Court makes this inference because some kinds of clearly illicit behavior (such as drug dealing) certainly constitute "commercial" activity, yet it is doubtful that the Eleventh Circuit was referring to this type of activity when discussing a "commercial venture" in the context of renting out hotel rooms.

[7] *See e.g. J.C. v. Choice Hotels International, Inc.,* 2020 WL 6318707 (N.D. Cal. Oct. 28, 2020); *T.P. v. Wyndham Hotels & Resorts, Inc.,* 2022 WL 17363234 (S.D. Ohio Dec. 1, 2022); *Doe v. Wyndham Hotels & Resorts, Inc.,* 2024 WL 4224915 (W.D. Tex. Aug. 30, 2024); *J.M. v. Choice Hotels Int'l, Inc.,* 2023 WL 3456619 (E.D. Cal. May 15, 2023); *but see Doe (P.B.) v. Wyndham Hotels & Resorts, Inc.,* 2023 WL 8890229 (D.N.J. Dec. 26, 2023).

§ 1595(a).[8] In that case, the court denied the defendant's motion to dismiss because the plaintiff sufficiently alleged "that Defendant was engaged in a commercial business venture with A.W.'s traffickers because she state[d] that Defendant receives a portion of the franchisee hotel's profits from renting rooms to traffickers and were [sic] generally aware of trafficking in their hotels through a combination of online reviews, related ongoing litigation, and trafficking-related criminal activity." *A.W.*, 2022 WL 17741050 at *9.

Here, Plaintiff alleges that Moving Defendants received revenue every time that a room was rented at the Clarksville Days Inn and therefore financially benefitted when a room was rented to Plaintiff's trafficker. (Doc. No. 46 at ¶ 147).[9] The Court finds this allegation sufficient to satisfy this element of beneficiary liability. Like in the court in *M.A.*, this Court "finds Plaintiff has alleged sufficient facts to show [that Moving] Defendants 'participated in a venture' under § 1595" by alleging that Moving Defendants received revenue when a room at the Clarksville Days Inn was rented to people it knew or should have known were engaged in sex trafficking. *M.A.*, 425 F. Supp. 3d at 971.

---

[8] This opinion was authored by Judge Marbley, the same jurist who authored *M.A.,* which as previously mentioned has been widely used as an influential guide for analyzing TVPRA beneficiary-liability-based claims. *See A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 192 (E.D. Pa. 2020) ("We are persuaded [that] the clear language of section 1595 favors the approach taken by Judge Marbley focusing on a hotel's possible civil liability best conforms [sic] to Congress's intent in amending the Act to include a civil remedy provision, at least as applied to a hotel where there is a direct connection between a rental fee for the room where the trafficking is effected.").

[9] Plaintiff provides more detail in the SAC about how Moving Defendants profited from "reservation fees, marketing fees, loyalty program fees, and other miscellaneous fees" and maintains that "the fees generated by the [Moving Defendants] are primarily based on gross room rentals." (Doc. No. 46 at ¶ 147).

c. Knew Or Should Have Known That the Venture Was Engaged In Trafficking

The third element of a § 1595(a) claim based on a violation of § 1591 is that a defendant either "knew or should have known" that the venture was engaged in an act in violation of § 1591.[10] Moving Defendants argue that Plaintiff has not plausibly alleged this element. Specifically they argue that Plaintiff's statements that the trafficking had "effects on her appearance, demeanor, movements throughout the hotel, and her interactions with her trafficker, hotel staff and others" are vague and imprecise. (Doc. No. 67 at 11). Further, Moving Defendants attempt to discard as "conclusory" Plaintiff's allegation that hotel staff should have recognized signs of trafficking.

The characterization of this allegation as "conclusory" is unwarranted, given that it is supported by underlying allegations that there were up to fifteen men who visited Plaintiff's hotel room at unusual times each day, that these visitors were captured on the hotel security cameras, and that her traffickers would decline housekeeping service and cleaning for days at a time. (Doc. No. 67 at 12). So the Court does not find this allegation insufficient on the (purported) grounds that it is conclusory. Instead, the Court looks at the underlying factual allegations and determines whether they plausibly suggest that, as Plaintiff claims, that hotel staff should have recognized signs of trafficking.

In making this determination, the Court follows the lead of *M.A.* in placing these particular facts along a spectrum bookended by two cases, *Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017), and *Lawson v. Rubin*, 2018 WL 2012869 (E.D.N.Y. Apr. 29, 2018). *Ricchio* illustrates the clearest factual scenario where a plaintiff's allegations were sufficient to plausibly allege facts to satisfy this element. In that case, a hotel owner and a trafficker high-fived while discussing "getting this thing going again," and the trafficker "kicked and forced [the victim] back toward the rented

_____

[10] Given what Section 1591(a) prohibits, any such act can be referred to for short as an act of "human trafficking."

quarters when she tried to escape" in plain view of the motel's front office. *M.A.*, 425 F. Supp. 3d at 966 (quoting *Ricchio v. McLean*, 853 F.3d 553, 555 (1st Cir. 2017)). On the other end of the spectrum, *Lawson* illustrates a factual scenario where a plaintiff's allegations were clearly insufficient to plausibly allege liability for this element under § 1595(a). In that case, a condo owner leased a condo to Howard Rubin, who was "procuring women who he then sexually assaulted and abused." *M.A.*, 425 F. Supp. 3d at 966 (discussing the facts of *Lawson*). The only indication of this activity that the condo owner had, however, was one visit by the police and one visit by an ambulance to the premises over Rubin's six-year residency. The court in *Lawson* accordingly found that the plaintiff's allegations were insufficient to establish constructive knowledge[11] on the part of the condo owner because "there would not have been any reason for [the condo owner] to infer illegal conduct by Rubin or his employees" from these incidents. *Lawson*, 2018 WL 2012869 at *13-14.

In the instant case, Plaintiff's claims "fall somewhere between *Ricchio* and *Lawson*." *M.A.*, 425 F. Supp. 3d at 966. Plaintiff has alleged, with respect to events and circumstances on the premises of the Clarksville Days Inn:

- That "there was constant and heavy foot traffic in and out of Jane Doe's room involving men who were not hotel guests." (Doc. No. 46 at ¶ 82).

- That "Jane Doe had approximately 15 men per day sexually exploiting her at the Days Inn." (*Id.* at ¶ 82).

- That the '[m]en sexually exploiting Jane Doe entered and left her room at unusual times and stayed for brief periods." (*Id.* at ¶ 82).

---

[11] As is axiomatic, the notion of someone having "constructive knowledge" refers to a situation where the person *should have* known (realized) something even if they did not *actually* know (realize) it.

- That the "men visiting to sexually exploit Jane Doe would enter and exit the hotel in a manner such that they would be captured by [Moving] Defendants' surveillance cameras." (*Id.* at ¶ 82).

- That Plaintiff's traffickers "would decline [housekeeping] service for several consecutive days." (*Id.* at ¶ 82).

- That "there was widespread drug trade at the hotel, which is closely linked to human trafficking." (*Id.* at ¶ 126).

- That "there was an area of the hotel that staff informally designated for traffickers, drugs, and prostitution." (*Id.* at ¶ 126).

- That "rooms used by the traffickers were regularly observed to be [a] mess, to contain excessive sex and drug paraphernalia, and to have an unclean smell." (*Id.* at ¶ 126).

Plaintiff has also cited online reviews of the Clarksville Days Inn that noted illegal activity taking place on the premises. (*Id.* at ¶ 123). One review in particular stated "The cops pulled us over after we left the parking lot. They told us that this motel was known fir [sic] drugs and sex rings." (*Id.* at ¶ 123). Plaintiff also alleges that Moving Defendants had a general awareness of sex trafficking occurring at hotels and that Moving Defendants were specifically aware of reports of commercial sex activity occurring at their branded properties. (*Id.* at ¶¶ 37, 122).

The Court finds that these alleged facts, viewed in the light most favorably to Plaintiff, are sufficient to demonstrate that Moving Defendants should have known about the sex trafficking taking place at the Clarksville Days Inn. Although the Court does not find that Moving Defendants had *actual* knowledge of Plaintiff's sex trafficking, that is not what the statute requires. Instead, the statute requires in essence *constructive* knowledge; that is Plaintiff must plausibly allege that Moving Defendants *should have known* that the venture was engaged in sex trafficking. Given the

similarity to the circumstances in *M.A.*, this Court finds that Plaintiff has done that. The alleged specifics of the circumstances surrounding Plaintiff, including that there were up to fifteen men coming and leaving a hotel room each day, surely would have alerted staff to her situation in an industry that is already generally on notice about the prevalence of sex trafficking.[12] Further, the traffickers would decline housekeeping service, the rooms were found to contain excessive "sex and drug paraphernalia", and there was an area of the hotel informally designated for prostitution. (*Id.* at ¶¶ 82, 126). Therefore, the Court finds that Plaintiff has plausibly alleged constructive knowledge on behalf of Moving Defendants sufficient to satisfy this third element. Plaintiff's allegations as to beneficiary liability under § 1595(a) are accordingly sufficient to survive Moving Defendants' motion to dismiss this claim.

## 2. Vicarious Liability

### a. Agency

In Cause of Action 3 in the SAC, Plaintiff has alleged that Moving Defendants should be found vicariously liable because (according to Plaintiff) the Days Inn Franchisee Defendants acted as Defendants' "actual agents" when committing violations of the TVPRA. (Doc. No. 46 at ¶ 169). Moving Defendants argue that the TVPRA does not allow for liability based on an agency relationship at all. They claim that the statute, by providing for beneficiary liability, precludes this type of "secondary liability" based on traditional common-law principles. Although Moving Defendants cite numerous cases in support of their statutory construction of the TVPRA, they

---

[12] The Court finds that the specific details that Plaintiff has alleged against Moving Defendants do not amount to mere "general awareness of sex trafficking that unjustifiably bridges the scienter gap between 'should have known' and 'might have been able to guess' *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020)." (Doc. No. 90 at 4). Instead, Plaintiff alleges a more detailed and particular set of facts that demonstrate Moving Defendants should have known *about sex trafficking at the Clarksville Days Inn in particular* (as opposed to merely about the prevalence of sex-trafficking generally at hotels nationwide)..

seemingly overlook several cases where district courts have in fact imposed the type of liability that Moving Defendants claim is precluded by the statute.

In the Court's view, Moving Defendants are correct to the extent they argue that an agency relationship does not support beneficiary liability. Liability under an agency theory is liability for a third party (a principal) based solely on the fact that its agent committed the actions (or inactions) that make the agent directly liable; in other words, the principal is indirectly liable for some other person's or entity's actions (or inactions) solely because that other person or entity is the principal's agent. This kind of liability is not the kind of liability imposed under a beneficiary-liability theory, which is a theory of *direct* liability. *See A.D. v. Wyndham Hotels and Resorts, Inc.*, 2020 WL 9550005 at *3 (E.D. Va. Sept. 21, 2020) ("[B]eneficiary liability is not third-party liability. Rather, it is another form of direct liability. Those who knowingly benefit from participating in a venture that they knew or should have known was sex trafficking are themselves directly liability for the harms caused to the victims."). But just because an agency relationship does not support *beneficiary* liability under the TVPRA does not mean that an agency relationship cannot support liability under the TVPRA under some other theory, i.e., an agency theory. Nothing in the TVPRA expressly precludes such a theory. *See id.* at n.1 ("Whether a third party—such as an employer or parent company—can be held indirectly liability [sic] for the beneficiary's tortious conduct is a separate question, which the TVPRA does not address.").

The Court is currently of the view that a principal can be held indirectly liable for its agent's violations of the TVPRA, at least under certain circumstances. *J.C. v. Choice Hotels Int'l, Inc.*, 2020 WL 6318707, *9 (N.D. Cal. Oct. 28, 2020) (finding that the TVPRA allowed for indirect liability based on an agency theory). This is consistent with the axiom that "[a] principal is generally liable for the knowledge received and the conduct committed by an agent within the

scope of employment." *In re Nat'l Century Fin. Enterprises, Inc.*, 783 F. Supp. 2d 1003, 1015 (S.D. Ohio 2011) (applying Ohio law). More specifically, it appears consistent with "[Tennessee] general common law of agency, which holds that when one directs, orders, or knowingly authorizes another to perform an act, then the principal is liable for the harm proximately caused by those acts." *Givens v. Mullikin ex rel. Est. of McElwaney*, 75 S.W.3d 383, 395 (Tenn. 2002), *superseded by statute on other grounds*.

Moving Defendants do not directly dispute that an agency relationship exists between them and Days Inn Franchisee Defendants, (Doc. No. 84 at 22), but the Court nonetheless will analyze the sufficiency of the allegations with respect to this part of the claim. In this instance, given the TVPRA's silence on the issue of agency for purposes of potential indirect liability, federal common law controls whether an agency relationship exists between these two entities. *See J.C. v. Choice Hotels Int'l, Inc.*, 2020 WL 6318707 at *8 (N.D. Cal. Oct. 28, 2020). Courts have routinely indicated that to apply federal common law in this regard means to "apply common law agency principles from the Restatement (Third) of Agency" in order to ascertain if an agency relationship exists. *J.C. v. Choice Hotels Int'l, Inc.*, 2020 WL 6318707 at *8 (N.D. Cal. Oct. 28, 2020); *see Hodgin v. UTC Fire & Sec. Americas Corp.*, 885 F.3d 243, 252 (4th Cir. 2018). Under the Restatement, "an agency relationship exists when a principal 'manifests assent' to an agent 'that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act.'" *Krakauer v. Dish Network, L.L.C.,* 925 F.3d 643, 659-60 (4th Cir. 2019) (quoting Restatement (Third) of Agency, § 1.01).

Plaintiff has alleged that Moving Defendants "subjected Days Inn Franchisee Defendants to detailed standards and requirements regarding the operation of Days Inn through the franchising agreement, [and] through detailed written policies and manuals" and "dictated the specific manner

in which Days Inn Franchisee Defendants and hotel staff must carry out most day-to-day functions at Days Inn." (Doc. No. 46 at ¶ 151). Plaintiff has also alleged, among other things, that Moving Defendants "mandat[ed] training and education for franchisees and/or hotel staff" and "directe[ed] Days Inn Franchisee Defendants to take specific steps to come into compliance with detailed and exacting standards regarding day-to-day operations." (Doc. No. 46 at ¶ 154).

These allegations are sufficient to plausibly allege an agency relationship between Moving Defendants and Days Inn Franchisee Defendants.[13] *J.N.K. v. Red Roof Inns*, No. 2:24-CV-00389, 2025 WL 772150 at *19 (S.D. Ohio Mar. 11, 2025) ("[F]ranchisor hotels may be held vicariously liable under an agency theory for the wrongful acts of their franchisees, or franchisees' employees, when the hotel franchisor has direct control of, or the right to control, the day-to-day operations of the franchisee."); *see also Bricker v. R&A Pizza, Inc.*, 804 F. Supp 2d 615 (S.D. Ohio 2011). Further, "[g]enerally, the existence and scope of agency relationships are factual matters and are therefore often appropriately left to the jury." *Krakauer v. Dish Network, L.L.C.,* 925 F.3d 643, 660 (4th Cir. 2019) (citing *Metco Products, Inc., Div. of Case Mfg. Co. v. NLRB*, 884 F.2d 156, 159 (4th Cir. 1989)). Therefore, the Motion is denied with regard to Cause of Action 3 in the SAC.

---

[13] As will be explained in greater detail in the opinion addressing the claims against Days Inn Franchisee Defendants, the Court finds that, for the purposes of the instant Motion, the pleadings suggest that there could be an underlying § 1595(a) claim that would potentially form the underlying basis of liability for Moving Defendants under an agency-liability theory. Therefore, although the Court declines to state how it will address the § 1595(a) claim Plaintiff has made against Days Inn Franchisee Defendants (a claim that Days Inn Franchisee Defendants have moved to dismiss), the Court will treat the pleadings as supporting that underlying claim strictly for the purposes of resolving the agency-liability claim against Moving Defendants.

b. Joint Employer[14]

In Cause of Action 4, Plaintiff has alleged that Moving Defendants should be found liable for the actions of the staff of the Clarksville Days Inn for violations of the TVPRA as a joint employer of that staff. Moving Defendants have moved to dismiss this claim by arguing that "the joint-employer doctrine is an employment law concept that *employees* can assert to try and hold multiple parties liable as employers for employment law violations." (Doc. No. 67 at 17). Contrary to this assertion, courts have come to a different conclusion regarding joint-employer liability in the context of the TVPRA. In *M.A.,* the court found that the plaintiff had plausibly alleged joint-employer status sufficient to find the franchisor defendants liable even though the plaintiff had not alleged additional facts beyond those included in her agency claim. *M.A.,* 425 F. Supp. 3d at 972 ("Although M.A. has not alleged additional facts specific to the joint employer allegation, her facts supporting an agency relationship could plausibly show some element of control to establish joint employer status. Therefore, her allegations meet the pleading standard for the same reasons as above.") And recently, another district court in this circuit, apparently accepting that a hotel franchisor could be held vicariously liable as a joint employer (joint, that is, with the franchisee)

---

[14] The idea behind joint-employer liability is that: (i) two or more persons or entities can *each* be deemed employers of a common employee (or employees), making each of them a so-called "joint" employer; and (ii) each joint employer can be found liable for the actions (or inactions) of their common employee(s) following traditional notions of *respondeat superior* liability. Anything or anyone that can properly be considered a joint employer (along with the primary employer) can therefore be found liable under a joint-employer liability theory. Tennessee law recognizes *respondeat superior* liability for employers based on the actions of employees (or other agents of an employer such as independent contractors). *Binns v. Trader Joe's E., Inc.*, 690 S.W.3d 241 (Tenn. 2024) ("Under the common law doctrine of respondeat superior an employer may be held liable for the torts committed by his or her employees") (quotations and citations omitted). Generally, *respondeat superior* liability must be based on the tortious actions or inactions of employees. Therefore, Plaintiff must plausibly allege not only that Moving Defendants are joint employers of the employees (or other non-employee agents), but also that the Clarksville Days Inn employees themselves violated the TVPRA through their actions or inactions.

of hotel staff,[15] found that the plaintiff-victim sufficiently alleged that the franchisor defendant was a joint employer for purposes of establishing such vicarious liability. *A.M. v. Wyndham Hotels & Resorts, Inc.*, 728 F. Supp. 3d 787 (S.D. Ohio 2024), *amended on reconsideration sub nom. In re Hotel TVPRA Litig.*, No. 2:21-CV-4933, 2024 WL 4945135 (S.D. Ohio Dec. 3, 2024). Although "most courts have recognized that the employer control theory and the agency theory are 'essentially the same'" *A.W. v. Red Roof Inns, Inc.*, 2022 WL 17741050 (S.D. Ohio Dec. 16, 2022) (quoting *Satterfield v. Tennessee*, 295 F.3d 611, 618 n.6 (6th Cir. 2002)), Plaintiff points to additional specific facts establishing Moving Defendants' control over the employment of the hotel staff.

In particular, Plaintiff has alleged that Moving Defendants are in control of setting staffing levels, providing job descriptions, providing benefits to staff, and controlling the training procedures that staff must complete. (Doc. No. 46 at ¶ 153). These allegations are sufficient to plausibly allege joint-employer status on behalf of Moving Defendants.

As noted above, however, Plaintiff also needs to plausibly allege that the *staff* committed a violation of the TVPRA. This is because the actions of the employees form the basis of liability that is imputed to joint employers under principles of *respondeat superior*; like any employer, a particular joint employer is liable under *respondeat superior* principles only to the extent that the joint employer's employee(s) engaged in tortious conduct. The Court finds that the SAC plausibly alleges that Days Inn Franchisee Defendants, as entities, could potentially have violated the TVPRA via particular actions or inactions so as to potentially form the basis of a beneficiary-liability-based claim under Section 1595(a). But such *entity* actions or inactions could have been

---

[15] The Court notes that hotel staff could include not only "employees" as such, but also workers who are treated as independent contractors. The Court does not see a basis for distinguishing between employees and independent-contractor workers for purposes of employer liability (including joint-employer liability) in the TVPRA context.

committed only via *employees* (or other agents) working at the Clarksville Days Inn. Construing the SAC in Plaintiff's favor, it plausibly alleges TVPRA violations on behalf of the Clarksville Days Inn staff, thus laying a foundation for Moving Defendants' joint-employer liability.

The Court therefore finds that Plaintiff has plausibly alleged vicarious liability for Moving Defendants under this theory and accordingly Moving Defendants' Motion is denied with regard to Cause of Action 4 in the SAC.

### 3. Group Pleading

Moving Defendants argue that Plaintiff has impermissibly engaged in "group pleading" in the SAC because (according to Moving Defendants) it contains allegations against the various Moving Defendants named in this action without distinguishing between the Moving Defendants as supposedly mandated by the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief". Fed. R. Civ. P. 8(a)(2). Further, a complaint must be written in a way so that it "give[s] the defendant fair notice of what . . . the claim is and the grounds upon which it rests." *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 545, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957)). Defendants claim that that the SAC "ignores the fact that the Wyndham [Moving] Defendants are separate and distinct legal entities with a right to notice of the specific allegations made against each of them." (Doc. No. 67 at 7).

The Court finds that the allegations made against Moving Defendants[16] collectively are acceptable at this stage of the litigation. Specifically, the Court agrees with Plaintiff that the SAC

---

[16] Plaintiff named the following in the SAC as the "Wyndham Brand Defendants": Wyndham Hotels & Resorts, Inc., Wyndham Hotel Group, LLC, and Days Inn Worldwide, Inc. (Doc. No. 46 at ¶ 19). As previously stated, these Moving Defendants have collectively moved to dismiss the Complaint.

alleges "that the [Moving] Defendants violated the TVPRA individually and that they acted as a joint venture and thus are mutually responsible." (Doc. No. 84 at 25). Given the nature of this action and the interconnectedness of Moving Defendants, there are bound to be some more general allegations made against them all. However, this more general method of pleading can be appropriate in cases where additional discovery may be required to more fully clarify the role played by each of the Moving Defendants. *See Opheim v. Volkswagen Aktiengesellschaft*, 2021 WL 2621689 at *7 (D.N.J. June 25, 2021) ("[T]he entities here are intertwined, and more discovery is needed to determine the precise role of each. In such circumstances, there is no need to dismiss the complaint [on the basis of the plaintiff inadequately distinguishing between multiple defendants]."); *see also Cole v. City of Memphis,* No. 13-CV-02117-JPM-DKV, 2013 WL 2443242, at *4 (W.D. Tenn. June 4, 2013). The Court finds that these circumstances are present here, because the SAC plausibly suggests that at least one of the Moving Defendants is liable, that the various Moving Defendants bear a close relationship within an organizational structure of various entities, that the role of the various Moving Defendants in the alleged misconduct is naturally opaque to an outsider like Plaintiff, and that more discovery naturally is necessary to determine which one(s) of the Moving Defendants may be liable for the alleged misconduct.

Furthermore, unlike situations where defendants had claims against them dismissed because they were not even mentioned in the body of the complaint, Plaintiff has clearly named "[each Moving Defendant] in her Complaint and made allegations specific" to the Moving Defendants collectively. *M.A.*, 425 F. Supp. 3d at 973. Moreover, the SAC's structure is appropriate given the nature of the pleadings, and Plaintiff's grouping fairly organizes her allegations in this context. This is unlike other instances where courts have dismissed complaints for reflecting "shotgun pleading" where plaintiffs "make it virtually impossible for a defendant to

know which allegations of fact are intended to support which claims for relief." *Arnold v. CooperSurgical, Inc.*, 681 F. Supp. 3d 803, 824 (S.D. Ohio 2023). The Court therefore finds that the allegations are adequate to meet the notice requirement of Rule 8 and *Twombly*, and therefore declines to grant Moving Defendants' Motion on this basis.

<u>CONCLUSION</u>

For the reasons stated herein, the Motion (Doc. No. 66) will be DENIED.

An appropriate corresponding order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE