IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JANE DOE (T.W.),               )
                               )
        Plaintiff,             )
                               )
                               )        No. 3:23-cv-00928
v.                             )
                               )        JUDGE RICHARDSON
JRD PARTNERSHIP, ET AL.,       )
                               )
        Defendants.            )

## MEMORANDUM OPINION

Pending before the Court is the motion to dismiss Plaintiff's Second Amended Complaint

(Doc. No. 46, "SAC") filed by Defendant JRD Partnership d/b/a America's Best Inn ("Defendant")

pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. No. 68, "Motion").[1] Defendant filed an accompanying

memorandum in support thereof (Doc. No. 71, "Memorandum"). Plaintiff thereafter filed a

response in opposition (Doc. No. 82), to which Defendant filed a reply (Doc. No. 86). For the

reasons stated herein, the Motion will be DENIED.

## BACKGROUND[2]

---

[1] There are Defendants named in the SAC that are referred to herein collectively as "co-Defendants." As noted below, Defendant was allegedly the franchisee operator of the Clarksville America's Best Inn during the period of the alleged sex trafficking and it is referred to in the SAC as "JRD Partnership" or "AB Franchisee Defendant." (Doc. No. 46 at ¶ 15). Co-Defendants have filed two motions to dismiss (Doc. Nos. 66 and 72). The first (Doc. No. 66) was filed by a trio of co-Defendants referred to collectively as the "Wyndham Defendants." (Doc. Nos. 46 at ¶¶ 16-19 and 66 at 1). The Court denied that motion to dismiss in an order dated April 10, 2025 (Doc. No. 108). The second motion to dismiss (Doc. No. 72) was filed by co-Defendants Shri Mahavira Clarksville, Inc. and Shree Mahavira, LLC referred to collectively as the "Days Inn Franchisee Defendants." (Doc. No. 46 at ¶¶ 22-24). The Court denied that motion to dismiss in an order dated August 19, 2025 (Doc. No. 120). The other remaining co-Defendants are a trio of businesses referred to collectively as the "AB Brand Defendants." (Doc. No. 46 at ¶¶ 11-14). These Defendants have not filed a motion to dismiss.

[2] The facts herein are taken from the SAC, which is the operative complaint in this case. For purposes of the instant Motion, the facts in the SAC are accepted as true, except to the extent that they are qualified herein (as, for example, by "Plaintiff alleges") to denote that they are not being taken as true but instead are

Between April 2011 and October 2014, Plaintiff was (human) trafficked at the Clarksville America's Best Inn. (Doc. No. 46 at ¶ 28). During this period, her trafficker controlled her, physically abused her, and threatened her family in order to force her to perform commercial sex for his commercial benefit. (*Id.* at ¶ 30). Sex trafficking and related criminal activity regularly took place at the Clarksville America's Best Inn. (*Id.* at ¶¶ 74-75). Defendant "owned, operated, controlled, and/or managed the Clarksville America's Best Inn through the America's Best franchising system" at "relevant times." (*Id.* at ¶ 15).

Plaintiff alleges that Defendant knew or should have known that trafficking was taking place at the Clarksville America's Best Inn. (*Id.* at ¶ 91). There were several signs of trafficking that hotel staff observed. First, there was a frequent flow of males in and out of rooms after brief stays when they were not guests of the hotel. (*Id.* at ¶ 74). Second, there was at the hotel a widespread drug trade, an enterprise that is closely linked to that of human trafficking. (*Id.*). Third, there was an area of the hotel that staff informally designated for traffickers, drugs, and prostitution. (*Id.*). Fourth, the rooms used by the traffickers were observed to be messy and to contain excessive sex and drug paraphernalia. (*Id.*). Finally, Plaintiff's traffickers would decline housekeeping service for several days at a time. (*Id.* at ¶ 82).

Defendant continued to rent rooms to traffickers, including Plaintiff's traffickers in particular. (*Id.* at ¶¶ 91, 102). Defendant accommodated the traffickers' requests for preferred locations within the hotel. (*Id.* at ¶ 93). Defendant also received a monetary benefit every time a room was rented to a trafficker. (*Id.* at ¶ 102). Traffickers generally used the Clarksville America's

---

set forth merely to make clear what a party claims to be true. Throughout this opinion, the Court forgoes any such qualifiers for any fact that it is accepting as true, stating those facts without qualification even though it is aware that any such (alleged) fact ultimately might not prove to be true. The Court emphasizes that whenever it states (alleged) facts without qualifiers, consistent with the above-stated protocols, it has not found the alleged facts to be the actual facts.

Best Inn due to their understanding that it was a venue that would provide minimal interference with their operations. (*Id.*).

Defendant also had a general awareness that sex trafficking was a problem in the hotel industry. Multiple government agencies have produced reports and guidelines advising the hotel industry on ways to detect sex trafficking and to combat the practice. (*Id.* at ¶ 39). Defendant was educated on how to spot sex trafficking activity on its premises, and Plaintiff alleges that it knew that the signs hotel staff observed indicated that sex trafficking was taking place at the Clarksville America's Best Inn. (*Id.* at ¶ 45, 73-76).

<u>LEGAL STANDARD</u>

For purposes of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must take all of the factual allegations in a complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id.* A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 679. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id.*; *Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018) (citing *Fritz v. Charter Tp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010)). Moreover, factual allegations that are merely *consistent* with the defendant's liability do not satisfy

the claimant's burden, as mere consistency does not establish *plausibility* of entitlement to relief, even if it supports the *possibility* of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bald" allegations. *Id.* at 681. The question is whether the remaining allegations—factual allegations, *i.e.*, allegations of factual matter—plausibly suggest an entitlement to relief. *Id.* If not, the pleading fails to meet the standard of Fed. R. Civ. P. 8, and thus must be dismissed pursuant to Rule 12(b)(6). *Id.* at 683.

On a Rule 12(b)(6) motion to dismiss, "[t]he moving party has the burden of proving that no claim exists." *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). That is not to say that the movant has some *evidentiary* burden; as should be clear from the discussion above, evidence (as opposed to *allegations* as construed in light of any allowable matters outside the pleadings) is not involved on a Rule 12(b)(6) motion. The movant's burden, rather, is a burden of *explanation*; since the movant is the one seeking dismissal, it is the one that bears the burden of explaining—with whatever degree of thoroughness is required under the circumstances—why dismissal is appropriate for failure to state a claim. *See, e.g.*, *Moon v. Sissen*, No. 2:24-CV-12850, 2025 WL 1450705, at *10 (E.D. Mich. Apr. 24, 2025) ("This [burden] requires the movant to *explain* why dismissal for failure to state a claim is appropriate." (citing *Pinnacle Bank as trustee of Ransom Fam. Tr. v. Fid. & Deposit Co. of Md.*, 598 F. Supp.

3d 666, 670-71 (M.D. Tenn. 2022) (Richardson, J.))), *report and recommendation adopted*, No. 2:24-CV-12850, 2025 WL 1447370 (E.D. Mich. May 20, 2025).

DISCUSSION

Plaintiff has filed this lawsuit pursuant to the Trafficking Victims Protection Reauthorization Act ("TVPRA"). The TVPRA has two provisions relevant for present purposes—one criminal (18 U.S.C. § 1591, "Section 1591") and one civil (18 U.S.C. § 1595, "Section 1595"); the two are interrelated. The criminal provision provides criminal penalties for:

(a) Whoever knowingly –

  (1) in or affecting interstate or foreign commerce, … recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or

  (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1)

    knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a). The civil provision states the standard for civil liability of the kind that Plaintiff seeks to impose on Defendant here—i.e., civil liability of a defendant to a victim due to a violation of a provision of the particular chapter (Chapter 77 of Title 18 of the United States Code in which 18 U.S.C. § 1591(a) is found). That provision reads, in pertinent part:

An individual who is a victim of a violation of this chapter [including a violation of 18 U.S.C. § 1591(a)] may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a).[3] This statute allows for a cause of action for "perpetrator liability" and "beneficiary liability."[4] Here, Plaintiff has sued Defendant under a theory of perpetrator liability in Cause of Action 1 as set forth in the SAC. (Doc. No. 46 at 60). Plaintiff also has sued Defendant under a theory of beneficiary liability in Cause of Action 2 as set forth in the SAC.[5] (*Id.* at 60-61). The Court will analyze the beneficiary-liability-based claim before turning to the perpetrator-liability-based claims.

**Beneficiary Liability**

Beneficiary liability of a person[6] under Section 1595(a) requires that: "(1) the person or entity must knowingly benefit, financially or by receiving anything of value, (2) from participating in a venture, (3) that the person knew or should have known has engaged in an act in violation of this chapter [including a violation of 18 U.S.C. § 1591(a)]." *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 964 (S.D. Ohio 2019) (quotations and citations omitted).

*Knowing Benefit*

---

[3] Notably, the statute here speaks in terms of the *venture* "engaging in" illegal acts. It is worth keeping in mind that a venture can engage in acts (whether legal or illegal) only through actual individuals acting on its behalf.

[4] Beneficiary liability was established under the amended TVPRA in order to hold accountable those who are not subject to criminal liability under Section 1591 yet still "knowingly benefitted" from participating in a venture they knew or should have known was committing an offense under Section 1591. *See Doe v. Wyndham Hotels & Resorts, Inc.*, No. 1:24-cv-00109, 2024 WL 4224915, at *3 (W.D. Tex. Aug. 30, 2024).

[5] The Court herein refers to Plaintiff's specific claim made under a theory of beneficiary liability as a "beneficiary-liability-based" claim. Likewise, the Court herein refers to Plaintiff's specific claims (of which there are two) made under a theory of perpetrator liability as "perpetrator-liability-based" claims.

[6] Section 1595(a), which allows for the beneficiary liability of a "person," also apparently allows for the beneficiary liability of a legal entity that constitutes such a "person." *M.A.* makes this clear, as that case refers to a "person or [an] entity" in the first element of a beneficiary liability claim under Section 1595(a). *M.A.*, 425 F. Supp. 3d at 964. Furthermore, in *M.A.* the defendants were not individuals but rather hospitality corporations or limited liability companies (i.e., "legal entities"). Therefore, the Court finds that legal entities (including the instant Defendant, which is a general partnership (Doc. No. 58-1)) can be liable "persons" under Section 1595(a).

The first element of a beneficiary-liability-based claim under Section 1595(a) is that an entity must "knowingly benefit[]," financially or otherwise, from participating in a venture that it knew or should have known has engaged in an act in violation of Chapter 77 of Title 18 of the U.S. Code. Plaintiff alleges that Defendant "knowingly benefitted" financially from the alleged human trafficking venture that allegedly engaged in acts violative of 18 U.S.C. § 1591(a), because (according to Plaintiff) Defendant received revenue every time that a room was rented to a trafficker (including Plaintiff's specific traffickers). (*See* Doc No. 46 at ¶¶ 91, 102). Defendant did not address this element in its Motion or Memorandum. Additionally, there is authority from within this circuit to support Plaintiff's allegation, namely at least one district court case holding that "the rental of a room constitutes a financial benefit from a relationship with [a] trafficker sufficient to meet this element of the § 1595(a) standard." *M.A.*, 425 F. Supp. 3d at 965. The Court embraces that proposition.

Plaintiff has alleged that Defendant received revenue whenever one of its hotel rooms was rented and that it received revenue from Plaintiff's traffickers when they rented a room at the Clarksville America's Best Inn. (Doc. No. 46 at ¶¶ 91, 102). Therefore, the Court finds that Plaintiff has plausibly alleged this element of the claim.

*Participation In a Venture*

The second element of a beneficiary-liability-based claim under Section 1595(a) is that an entity must "participat[e] in a venture." The parties contest the applicable law guiding the circumstances under which a defendant generally can be deemed to have "participated in a venture" as required for liability under the TVPRA. Because there has been no Sixth circuit (or, for that matter, United States Supreme Court) case deciding this issue, the Court considers persuasive authority in addressing that issue—a task that is relatively involved because "[t]he

district courts are all over the map on the meaning of the[ ] terms" used in the elements of beneficiary-liability-based claims. *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 725 (11th Cir. 2021). As a starting point, however, the Eleventh Circuit in *Doe #1* explained that "[t]he ordinary meaning of 'venture' is an undertaking or enterprise involving risk and potential profit." *Id.* at 724.

Defendant argues that to satisfy this element, Plaintiff must plead that Defendant participated in a *sex trafficking* venture. (Doc. No. 71 at 5). In support of this argument Defendant relies largely on *Doe #1* and subsequent cases adopting *Doe #1*'s analysis. However, as this Court explained in its recent memorandum opinion (Doc. No. 107) accompanying the order (Doc. No. 108) denying the Franchisor Defendants' motion to dismiss, plaintiffs are not in fact required to have alleged that a defendant participated in a *sex trafficking venture* for purposes of establishing the defendant's beneficiary liability under Section 1595(a). Instead, in the view of this Court, alleging that a defendant participated in a *commercial venture*—meaning *any* commercial venture—with traffickers is sufficient to satisfy this element of the claim. *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544 (7th Cir. 2023).

Defendant relies on *Doe #1*, wherein the Eleventh Circuit found that although the plaintiffs' "allegations may suggest that the franchisors financially benefitted from renting hotel rooms to the Does' sex traffickers[,] . . . they do nothing to show that the franchisors participated in a common undertaking involving risk or profit that violated the TVPRA—*i.e.*, the alleged sex trafficking ventures." 21 F.4th at 726-27. Ultimately that court found that the plaintiffs could not sufficiently connect the dots from the traffickers to the franchisor defendants under this theory, because "they ha[d] provided no plausible allegations that the franchisors took part in the common undertaking of sex trafficking." *Id.* at 727. Defendant seems to argue that because Plaintiff has not alleged that

it participated in a *sex trafficking* venture, she cannot satisfy this element of this claim. (Doc. No. 71 at 7-14, 17).

Plaintiff distinguishes this case by arguing that *Doe #1* was limited to the theory alleged by the plaintiffs in that case: that the franchisor defendants participated in "sex trafficking ventures." (Doc. No. 82 at 9-10). Plaintiff aptly points out that the plaintiffs in *Doe #1* did not allege that the franchisor defendants participated in "commercial ventures," such as operating a hotel, but instead focused on the franchisor defendants having taken "part in the common undertaking of sex trafficking with hotel employees, management, owners, and sex traffickers." *Doe #1*, 21 F.4th at 726-27; (Doc. No. 82 at 9-10). The Court finds this point well taken.[7] In *G.G.*, the Seventh Circuit found *Doe #1* inapplicable because the plaintiffs framed the venture in terms of commercial activity as opposed to sex trafficking. *G.G.*, 76 F.4th at 561 ("Key to the court's reasoning was how the plaintiffs had chosen to define the alleged venture—specifically as a 'sex trafficking' venture. . . . [I]f the plaintiffs had alleged that the franchisors participated in *commercial ventures* to operate hotels and that those hotel ventures violated Section 1591, the result might have been different.") (quotations and citations omitted). And in *Doe #1* the Eleventh Circuit noted that its analysis turned on defining "the venture the Does say that the franchisors participated in." 21 F.4th at 726.

---

[7] In *Doe #1*, the Eleventh Circuit noted that the plaintiffs tried to argue something different on appeal, namely "that the franchisors participated in commercial ventures to operate hotels and that those hotel ventures violated the statute." 21 F.4th at 727. The Court infers that the alleged "commercial ventures" to which the plaintiffs tried to pivot were above-board in nature, or somehow legitimate and not connected with a sex-trafficking scheme. The Court makes this inference because some kinds of clearly illicit behavior (such as drug dealing) certainly constitute "commercial" activity, yet it is doubtful that the Eleventh Circuit was referring to this type of activity when discussing a "commercial venture" in the context of renting out hotel rooms.

In the instant case, Plaintiff has alleged that Defendant has participated in a *commercial venture* with traffickers by receiving revenue when they rented rooms out to individuals, including Plaintiff's trafficker. (Doc. No. 46 at ¶¶ 91, 102). This serves to materially distinguish the instant case from *Doe #1*. Furthermore, that case focused on *franchisor* defendants, and whether they should be found liable under a beneficiary-liability-based claim. The allegations relevant to the instant Motion are made against a *franchisee* defendant, which further distinguishes *Doe #1* from the facts at hand. And given that there was an ongoing business relationship between the traffickers (who used the rooms to conduct their activities) and Defendant (who benefitted by generating revenue from renting rooms to the traffickers), the Court finds that Plaintiff has plausibly alleged that Defendant participated in a venture so as to support this element of her beneficiary-liability-based claim.

*Knew Or Should Have Known That The Venture Was Engaged In Trafficking*

The third element of a Section 1595(a) beneficiary-liability-based claim against a defendant is that the defendant either "knew or should have known" that the venture was engaged in an act in violation of Chapter 77 of Title 18 of the United States Code. Defendant argues that Plaintiff has not plausibly alleged this element.

As an initial matter, Defendant argues that Plaintiff has not alleged that Defendant knew or should have known about the sex trafficking of Plaintiff in particular (as opposed to a more general knowledge of the sex trafficking taking place at the Clarksville America's Best Inn). (Doc. No. 71 at 7-8). However, the Court finds that knowledge of the specific victim is not in fact what the TVPRA requires to bring a beneficiary-liability-based claim. *G.G.*, 76 F.4th at 558 ("Knowledge of the specific victim, let alone knowledge of her identity, is not required.") (citation omitted). The Court is persuaded by the reasoning outlined in *G.G.*, in which the Seventh Circuit

found that, "it would take an additional inferential leap to conclude that Section 1595 requires knowledge of a particular *victim* of that particular venture." *Id.* at 556. Therefore, the Court finds that it is sufficient for Plaintiff to make venture-level allegations to satisfy this element of her claim.

And Plaintiff has done just that. She has alleged that up to fifteen men visited Plaintiff's hotel room at unusual times each day, that these visitors were captured by hotel security cameras, and that her traffickers would decline housekeeping service for days at a time. (Doc. No. 46 at ¶ 82). Further, the rooms were found to contain excessive "sex and drug paraphernalia," and there was an area of the hotel informally designated for prostitution. (*Id.* at ¶ 74). Therefore, the Court finds that Plaintiff has alleged factual matter that plausibly suggests constructive knowledge on the part of Defendant, which is sufficient to satisfy this element. Although, under the facts alleged by Plaintiff, Defendant did not have *actual* knowledge of sex trafficking, that is not what the statute requires. Instead, the statute requires in essence *constructive* knowledge; that is Plaintiff must allege facts plausibly suggesting that Defendant *should have known* that the venture was engaged in sex trafficking.

Overall, the Court finds that Plaintiff's allegations as to her beneficiary-liability-based claim under Section 1595(a) are sufficient to survive Defendant's Motion to Dismiss. Defendant asserts that Plaintiff has alleged merely that "[Defendant] either knew or was 'willfully blind' to sex trafficking because Defendant rented 'traffickers' rooms, accommodated requests for room locations, provided wi-fi services to traffickers, and supposedly created an environment that allowed traffickers to operate without concern of detection or interference." (Doc. No. 71 at 15) (footnote omitted). The Court finds that this scenario is in fact exactly what Congress had in mind when it amended the TVPRA to allow for beneficiary liability. *See M.A.*, 425 F. Supp. 3d at 964

(discussing the amendment and finding that Congress "ma[de] it easier for victims of trafficking violations to bring civil suits including by broadening the parties who could be sued for trafficking violations from only the perpetrator under the original statutory scheme to anyone who knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." (quoting *Plaintiff A v. Schair*, No. 2:11-cv-00145, 2013 WL 12495639, at *3 (N.D. Ga. Sept. 9, 2014)) (quotation marks omitted)). Further, as discussed above, Defendant failed to address Plaintiff's allegation entirely that Defendant benefited by receiving revenue whenever it rented a room at the Clarksville America's Best Inn to Plaintiff's traffickers. (Doc. No. 46 at ¶¶ 91, 102).

Accordingly, the Court finds that Plaintiff's allegations plausibly suggest liability under the expanded scope of liability under the TVPRA as amended.

**Perpetrator Liability**

Plaintiff has sued Defendant in Cause of Action 1 of the SAC under a theory of perpetrator liability pursuant to Section 1595(a). (Doc. No. 46 at 60). Perpetrator liability extends to defendants who are "perpetrators" of a violation of Chapter 77 of Title 18 of the U.S. Code. Plaintiff has specifically alleged that Defendant is liable as a perpetrator because it violated 18 U.S.C. § 1591(a) (which is a section of Chapter 77). (Doc. No. 46 at 60).

As previously stated, Section 1591(a) is the criminal statute of the TVPRA relating to sex trafficking. In Cause of Action 1, Plaintiff asserts two perpetrator-liability-based claims. First, Plaintiff alleges that Defendant "violated 18 U.S.C. § 1591(a)(1) when . . . it harbored individuals . . . knowing or in reckless disregard of the fact that the victims would be caused, through force, coercion, or fraud, to engage in commercial sex acts" at the Clarksville America's Best Inn. (*Id.* at 60). Second, Plaintiff alleges that Defendant "violated 18 U.S.C. § 1591(a)(2) when . . . it

knowingly received financial benefit by knowingly assisting, supporting, or facilitating a venture that was engaged in violations under [Section] 1591(a)(1)" at the Clarksville America's Best Inn. (*Id.*).

As an initial matter, the Court notes something that it observed in the parties' briefing on the Motion. Therein, it appears, the parties blurred the distinction between "perpetrator liability" and "beneficiary liability," which are two distinct concepts both housed under Section 1595(a).

The SAC includes two perpetrator-liability-based claims, which (as discussed above) asserted liability for Defendant based on its alleged violations of Sections 1591(a)(1) and 1591(a)(2), respectively. (*Id.*). In Defendant's Memorandum, however, there is no discussion about these perpetrator-liability-based claims. Instead, the Memorandum's argument is framed as one for dismissal of Plaintiff's claims made under Section 1595(a) generally, with an apparent focus on Plaintiff's beneficiary-liability-based claim. (Doc. No. 71 at 4, 14). For example, in the Memorandum's "Law and Argument" section, Defendant states only that "Section 1595(a) of the TVPRA provides a civil remedy for violation of 18 U.S.C. § 1591 against" "beneficiaries." (*Id.* at 4). The Court has accordingly interpreted that portion of the Memorandum to relate solely to the beneficiary-liability-based claim, as opposed to the perpetrator-liability-based claims, which Defendant does not specifically address or even mention.

This limited focus is apparent in Defendant's arguments attacking the sufficiency of the SAC to satisfy the elements of Plaintiff's beneficiary-liability-based claim under Section 1595(a). (*Id.* at 4-17). Defendant's Memorandum does not specifically address perpetrator-liability-based claims. When discussing Plaintiff's claims, Defendant states that "[t]he SAC is devoid of any facts to suggest that [Defendant] knew or should have known about participation in a sex trafficking venture involving Plaintiff T.W. as required by 18 U.S.C. § 1591 and 18 U.S.C. § 1595." (Doc.

No. 86 at 5). Defendant's citation to both statutes here is telling, as Defendant's Memorandum seems to mix the elements of perpetrator liability and beneficiary liability together (as if they are the same). But the elements are different. *See M.A.*, 425 F. Supp. 3d at 968-69 (discussing the different meanings of "participation in a venture" under Section 1591 as compared to Section 1595). Perhaps this was Defendant's way of trying to deal with both types of claims at once, but the Court was puzzled by Defendant's argument here and is uncertain of its efficacy.

This confusion may stem from the particular language of, and interplay between, Section 1595(a) and Section 1591(a). As previously stated, under Section 1595(a) a victim of a violation of Chapter 77 of Title 18 of the U.S. Code may bring a claim (a perpetrator-liability-based claim) against the perpetrator of that violation, or whoever knowingly benefitted, financially or by receiving anything of value, from participating in a venture that the person knew or should have known engaged in an act in violation of Chapter 77 (including a violation of Section 1591). *See* 18 U.S.C. § 1595(a). Perpetrator liability under Section 1595(a) can be based on a violation of Section 1591(a), which in turn extends criminal liability to "[w]hoever knowingly . . . benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1)." 18 U.S.C. § 1591(a)(2). Given the use of the word "benefit" in Section 1591(a)(2), one understandably could mistake (i) a perpetrator-liability-based claim brought under Section 1595(a) based on a violation of Section 1591(a)(2), for (ii) a beneficiary-liability-based claim brought under Section 1595(a) based on a violation of either Section 1591(a)(1) or Section 1591(a)(2). Whatever the reason, the Court has experienced some

difficulty in trying to determine whether particular arguments of Defendant target Plaintiff's beneficiary-liability-based claims, Plaintiff's perpetrator-liability-based claims, or both.[8]

That being so, it is unsurprising that the Court finds that Defendant has inadequately addressed Plaintiff's perpetrator-liability-based claims in either its Motion or Memorandum. As noted above, on a 12(b)(6) motion to dismiss, the defendant-movant bears the burden of showing that the plaintiff has failed to state a claim. Defendant simply has not met that burden. To obtain dismissal of a particular claim, Defendant was required to address the claim and explain why it should be dismissed. That work necessary to meet that requirement is for Defendant, rather than the Court, to undertake. The Court will not use limited judicial resources to walk through the perpetrator-liability-based claims in lieu of Defendant properly making an argument to dismiss them.

Therefore, the perpetrator-liability-based claims were not adequately addressed in either the Motion or accompanying Memorandum. Those claims therefore survive the instant Motion at least long enough to face Defendant's limitations-based defense, which the Court discusses next.

---

[8] In Plaintiff's Response, there is also a very limited discussion pertaining to the perpetrator-liability-based claims that Plaintiff has asserted in Cause of Action 1 in the SAC. In essence, Plaintiff did not address these claims, and seemingly responded to Defendant's Memorandum only in relation to the beneficiary-liability-based claim that Plaintiff alleged in Cause of Action 2. There remain outstanding legal questions surrounding key terms relating to, and the elements of, beneficiary-liability-based claims (which, themselves, depend in part on a statutory construction of Section 1595(a) as it relates to Section 1591(a)). S*ee M.A.*, 425 F. Supp. 3d at 968-69 (discussing the different meanings of "participation in a venture" under Section 1591 as compared to Section 1595). But as noted elsewhere herein, the Court finds that Plaintiff's perpetrator-liability-based claims were not clearly (and certainly not adequately) addressed in Defendant's Memorandum. This finding is entirely consistent with the fact that Plaintiff in her Response barely addressed (and perhaps perceived no real need to address) Plaintiff's perpetrator-liability-based claims.

**Statute of Limitations**

Section 1595(c) states that "[n]o action may be maintained under subsection (a) [referring to both perpetrator-liability-based claims and beneficiary-liability-based claims] unless it is commenced not later than . . . 10 years after the cause of action arose[.]" 18 U.S.C. § 1595(c).

Defendant asserts that Plaintiff's "Section 1595(a) claim under the TVPRA should also be dismissed because it is time-barred by the applicable ten (10) year statute of limitations period."[9] (*Id.* at 17). But Defendant then equivocates, describing what (in Defendant's view) is time-barred not *as the claim* (*or* "action," the term used by Section 1595(c)), but rather as "any events that occurred ten (10) years prior to August 31, [2023]," the date of filing of Plaintiff's original complaint in this action. (*Id.* at 18).[10] So it appears to the Court that what Defendant is asking for is to have the Court to bar "events." Defendant fails to (a) provide any authority for the proposition that a statute of limitations can serve to bar "events" (as opposed to *claims*); or (b) explain what it means to bar "events" (as opposed to claims); or (c) explain how the barring of any such events would affect or relate to the prosecution of the claim to which those events relate. Because the argument developed in favor of Defendant's ultimate request here—the barring of "events" occurring prior to a particular date—is so underdeveloped, the Court rejects it outright.

Alternatively, even if Defendant were treated as arguing for dismissal of the *claim*, the Court likewise would reject that argument as being underdeveloped. To the extent that there is any argument, it consists solely of (i) the assertion that "claims occurring more than ten (10) years prior to filing suit . . . are time-barred;" and (ii) the observation that Plaintiff "claims that her sex

---

[9] Again, when making this argument, Defendant refers to only Plaintiff's Section 1595(a) "claim" in the singular. (Doc. No. 71 at 17). The Court therefore understands this argument to refer to only the beneficiary-liability-based claim asserted against Defendant, as that is the only claim Defendant's Memorandum addresses.

[10] Defendant here actually writes "2013," but clearly meant "2023."

trafficking occurred between April 2011 through October 2014." (*Id.* at 17-18). The first of these two premises is flawed from the outset because it is inaccurate to say that "claims occurring more than ten (10) years prior to filing suit . . . are time-barred." For one thing, claims do not "occur" at a particular time, but rather are *based on events* that occur at particular times. Moreover, even if it could be said that a claim "occurs" at a particular time, (a) the undersigned would have no idea what it means for a claim to "occur," and Defendant has not explained what it means; and (b) Defendant has not even attempted to explain when Plaintiff's Section 1595(a) claim "occurred." Additionally, Defendant has cited no authority for the proposition, which strikes the undersigned as plainly wrong, that time bars are generally (or even *ever*) based on when claims "occur." Instead, they typically are based on when claims *accrue*, which is to say that the specified limitations period generally runs from the date that the claim accrued. And here, the statute makes plain that the ten-year limitation period begins to run at the time the claim "arose." Defendant has not provided any analysis whatsoever as to when Plaintiff's Section 1595(c) claim "arose (or, for that matter, "accrued")—let alone explained why the Court should conclude that the claim arose more than ten years prior to August 31, 2023.

There is an additional and alternative basis for the Court to decline to dismiss the Section 1595(a) claim on limitations grounds. To understand that basis, one must first grasp the circumstances under which a motion to dismiss is the proper vehicle to raise a statute-of-limitations defense, which is an affirmative defense. "Typically, [s]tatute-of-limitations defenses are [more] properly raised in Rule 56 motions [for summary judgment], rather than Rule 12(b)(6) . . . motions, because [a] plaintiff generally need not plead the lack of affirmative defenses to state a valid claim." *Busler v. Nissan N. Am., Inc.*, 688 F. Supp. 3d 668, 686 (M.D. Tenn. 2023) (quoting *Munson Hardisty, LLC v. Legacy Pointe Apartments, LLC*, 359 F. Supp. 3d 546, 567 (E.D. Tenn.

2019)) (quotation marks omitted).[11] "However, if it is 'apparent from the face of the complaint that the time limit for bringing the claim[s] has passed,' then the plaintiff, if he wishes to avoid dismissal, has an 'obligation to plead facts in avoidance of the statute of limitations defense.'" *Id.* (quoting *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008)). When "the allegations in the complaint affirmatively show that the claim is time-barred," then "dismissing the claim under Rule 12(b)(6) is appropriate." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012).

The Court finds that the allegations in the SAC do not affirmatively show that Plaintiff's claims are time barred. Plaintiff has alleged that she was trafficked at the Clarksville America's Best Inn "from April 2011 through October 2014." (Doc. No. 46 at ¶ 28, 31). Under the continuing-tort doctrine, applicable (as its name indicates) when the tortious conduct at issue is continuous (i.e., occurs over a period of time), "the statute of limitations does not begin to run until the continuing wrongful conduct ends." *J.M. v. Choice Hotels Int'l, Inc.*, No. 2:22-cv-00672, 2022 WL 10626493, at *6 (E.D. Cal. Oct. 18, 2022). Courts have applied this doctrine to (sex-trafficking) violations of the TVPRA, because in instances of (routine) sex trafficking there is "no single incident that can fairly or realistically be identified as the cause of significant harm." *Id.* (quoting *Flowers v. Carville*, 310 F.3d 1118, 1126 (9th Cir. 2002)). The Court likewise applies the continuing-tort doctrine here. That means that the ten-year limitations period began to run when the wrongful conduct—i.e., Plaintiff's sex-trafficking at the Clarksville America's Best Inn— ended. Although the SAC does not clearly allege an end date of the wrongful conduct, it does allege that Plaintiff was trafficked at the Clarksville America's Best Inn through (at least) October

---

[11] There is another good reason why statute-of-limitations defenses typically may be unsuitable for final vindication at the motion-to-dismiss stage. As the undersigned discussed at some length decades ago, limitations questions can be rather involved, with the analysis in some cases being complex and comprising myriad steps. Eli J. Richardson, *Eliminating the Limitations of Limitations Law*, 29 Ariz. St. L.J. 1015 (1997). A thorough vetting of all the potential analytical issues often is unfeasible at the motion-to-dismiss stage.

2014. So, the limitations period began to run on a day in October 2014 (at the earliest) or at an unknown later date. Plaintiff filed her original complaint on August 31, 2023. (*See* Doc. No. 1). That is within the ten-year limitations period that 18 U.S.C. § 1595(c) prescribes. Therefore, the SAC does not affirmatively show that Plaintiff's claims are barred by the applicable statute of limitations.

Accordingly, Plaintiff's claims survive Defendant's motion to dismiss, and the Court declines to dismiss Plaintiff's claims on this basis.

CONCLUSION

For the reasons stated herein, the Motion (Doc. No. 68) will be DENIED.

An appropriate corresponding order will be entered.


_Eli Richardson_

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE